## Case No. 13,711.

### The SYLPH.

[4 Blatchf. 24.] [1]

Circuit Court, S. D. New York. April 20, 1857.

COLLISION—RUNNING IN FOG—CUSTOM—FERRY-BOAT—PILOT.

1. Where two steamboats collided in a dense fog, in the harbor of New York, each going at the same rate of speed, and no fault was imputable to either, this court dismissed a libel filed to recover damages caused by the collision.

[Cited in The Lepanto, 21 Fed. 659.]
[See The Albemarle, Case No. 135.]

2. It being the usage, in the harbor of New York, to run steamboats in thick weather, the court did not hold that both vessels were in fault.

3. If, in this case, one of the vessels had been at anchor, the other would have been charged with all the consequences of the disaster.

4. Semble, that, in a dense fog, vessels in the harbor of New York should anchor.

5. So long as the custom continues of running in such a fog, this court will not feel bound, in case of a disaster, to discriminate, with any very great nicety, as to the degree of fault imputable to the one or the other of two vessels which may choose to encounter the hazards of the navigation.

[Cited in The Matteawan, Case No. 9,283; The Joseph W. Gould, 19 Fed. 788.]

6. A steamboat plying on a ferry-line between New York and Port Richmond, is a ferry-boat, within section 42 of the act of August 30, 1852 (10 Stat 75), and is not obliged to have on board a licensed pilot and a licensed engineer.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, to recover damages caused by a collision. There was a decree in favor of the libellants in that court [case unreported], and the claimant appealed to this court.

Welcome R. Beebe, for libellants.
Edwin W. Stoughton, for claimant.

NELSON, Circuit Justice. The libel in this case was filed to recover damages for a collision that occurred in the bay of New York on the 17th of December, 1853, in which the steamboat Eagle was seriously damaged, the

---

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

bow of the Sylph, a ferry-boat, having struck her on her starboard side, some twenty or twenty-five feet abaft her stem, tearing away her bulwarks and deck and cutting her down below the water's edge. The Sylph had started, on the morning of the 17th of December, from the Whitehall dock, on her usual trip to Port Richmond, she being engaged in the ferry line between those two places. The Eagle was coming up to New York from Fort Hamilton, she being engaged in running between the city and Port Monmouth, in New Jersey. The collision occurred between nine and ten o'clock in the forenoon. There was a dense fog, so dense that the hands on either vessel could not see an object ahead beyond the length of their boat. Each was going at the same rate of speed, five knots the hour, which seems to be the rate adopted by steamers in the bay when moving in a fog as thick as that on the present occasion. The fires of both vessels were kept low, so that each could readily slow and stop and back in an emergency—another regulation, it seems, when running in a fog. A person was assigned, on each boat, to ring constantly the alarm bells, and they were heard by the approaching vessels in time for each to give the orders to slow and stop and back; and those orders were obeyed before either was seen by the other as she lifted out of the fog. When they came together there was more or less headway on each vessel, notwithstanding, as is abundantly evident upon the proofs, the hands on board of each exercised their best efforts and skill to check the motion, after hearing the alarm bells. Nothing seems to have been neglected on board of either, within their power at the moment, to avoid the disaster. No fault can be imputed to either, according to the proofs, unless, indeed, it was a fault to run the trips on which the vessels were engaged at all in the state of the weather. And, as to this, both stand on the same footing. Judge Ingersoll, who decided the case below, decreed for the libellants, putting his decision mainly upon the ground that, taking the strength of the Eagle, she being a new vessel, and the description of the wound inflicted, he was inclined to think that the speed of the Sylph was greater than that of the Eagle, and too great for the state of the weather. There are also some experts who express this opinion, from an examination of the wound. But, after the fullest consideration, I cannot concur in it. The proof, by witnesses, of the rate of speed of the Sylph, is as strong and decisive as that of the rate of the Eagle. For aught that appears, as much credit is due to one set of proofs as to the other; and, according to this proof, the rate of speed was the same. Besides, there are facts in the case which fairly enough account for the injury to the Eagle, consistently with the rate of speed of the two boats being equal, and the efforts of each being the same to check it at the instant of the danger.

The Sylph was much the heavier boat, according to the proof, and she struck the Eagle head on, and under her bulwarks and deck, tearing up and smashing them by the combined force of the motion of the two vessels. The manner of their coming together gave the advantage to the Sylph, which, together with her greater weight, may well account for the difference in the injuries to the two vessels. There are, also, some considerations that would naturally lead to the conclusion, the rate of speed of each vessel being the same at the time, and the efforts to check the two vessels being the same, that the motion of the Eagle could not be as readily overcome as that of the Sylph. The tide was strong flood, some four miles an hour. The collision occurred some distance below Castle William, in the bay. The Eagle, therefore, had the force of the tide to overcome, besides the motion from her engine; and the Sylph had the co-operation of this force to aid in checking her at the instant.

The case is a most unfortunate one, and may well attract the attention of masters and owners, and lead them to consider whether prudence would not dictate, from a proper regard as well for the lives of passengers as for the safety of property, that, in a port crowded, as is that of New York, with every species of water craft, vessels should anchor in so unusual and dense a fog. The master or pilot may, indeed, by the use of the compass, avoid running upon the shore or against an island, or any other fixed obstruction in the way; but these are trifling contingencies when compared with the chances of running against vessels moving or at anchor, as against which the compass is no security. If the Eagle had been at anchor in this case, and the Sylph had encountered her in that condition, I should not have hesitated to charge the Sylph with all the consequences of the disaster. As the case stands, I cannot see that the one is more in fault than the other: and, from the usage which has come frequently under my observation, of running these boats in thick weather, I am not disposed at present to hold that both were in fault, so as to justify an apportionment of the damages. But this I will say, that, so long as the custom continues, the court will not feel bound, in case of a disaster, to discriminate, with any very great nicety, as to the degree of fault imputable to the one or the other of two vessels which may choose to encounter the hazards of the navigation.

It has been urged that the Sylph was in fault for not having on board a licensed pilot and a licensed engineer, under the act of congress of August 30, 1852 (10 Stat. 61). But the forty-second section of that act excepts steamers used as ferry-boats. The Sylph, I think, comes fairly within this exemption.

The decree of the court below must be reversed, and the libel be dismissed, with costs.